```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                     EASTERN DIVISION

WILLIAM O. RIVES II                                    PLAINTIFF

VS.                              CIVIL ACTION NO. 3:05CV606TSL-JCS

SPECTRUM HEALTHCARE RESOURCES, INC.                    DEFENDANT
```

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Spectrum Healthcare Resources, Inc. for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff William O. Rives II has responded in opposition to the motion. The court has considered the memoranda of authorities, together with attachments, submitted by the parties, and concludes that while the record largely supports defendant's arguments, there is a disputed issue of fact relating to whether plaintiff was informed of a September 8, 2004 stop work order. In the court's opinion, in view of this disputed issue, summary judgment is properly denied.

Plaintiff, a dentist by profession, brought this action asserting claims for breach of contract, tortious interference with contract, equitable estoppel/detrimental reliance and fraud based on allegations that Spectrum induced him to terminate his existing employment and enter into employment agreements with Spectrum by misrepresenting to him that Spectrum had a contract

with the United States Army to provide dental services at Camp Shelby when, in fact, it did not have such a contract with the Army at any time, and at least not at the time it was making these representations to plaintiff.  Plaintiff alleges that Spectrum made such material and false representation to him, knowing such representation to be false, with the purpose and intent of inducing him to terminate his existing employment with Jackson-Hinds Comprehensive Health Care Center; that he "relied to his detriment upon the representations of Spectrum that he would have employment, as well as earning potential as an independent contractor" by quitting his existing employment with Jackson-Hinds Comprehensive Health Care Center; that Spectrum entered into two contracts with him to provide him with employment as well as an opportunity as an independent contractor; and that Spectrum has failed to honor its contracts with him.  In short, he charges that Spectrum knew it was not in a position to provide him with the promised employment opportunity, and misled him about its ability to do so.

As noted by Spectrum in its motion for summary judgment, each of plaintiff's claims appears grounded primarily on his allegation that Spectrum misrepresented that it had a contract with the United States Army to provide dental services at Camp Shelby when, according to plaintiff, "Spectrum never had a contract with the United States Army to provide dental services at Camp Shelby."  In

the court's opinion, the record evidence in this cause establishes beyond reasonable dispute that at the time it was negotiating with and entered into contracts with plaintiff, Spectrum did have such a contract; however, prior to plaintiff's starting work at Camp Shelby, the Army issued a stop work order to Spectrum and ultimately canceled its contract with Spectrum. Specifically, the record establishes the following.

On July 8, 2004, the United State Dental Army Command (Dencom) contracted with Spectrum for Spectrum to provide dental services at various Army bases across the country, including at Camp Shelby. Dencom had solicited proposals for such services to meet the Army's need for dentists to serve the large number of soldiers who were being called up for the war in Iraq. In an effort to hire dentists to fulfill its obligations under its contract with Dencom, Spectrum began advertising potential dentist positions at Camp Shelby. Plaintiff responded to such an ad and, after speaking with a recruiter for Spectrum, was offered a position. Spectrum began the process of "credentialing" plaintiff and the parties began negotiating terms of employment. However, on July 27, 2004, the Army issued a stop work order on the contract because of a protest of the award by a competitor. As explained by Sharon Krejci, Spectrum's corporate representative, the stop work order did not terminate the contract but provided notice that Spectrum would not be compensated for any further work

3

on the contract until the protest was resolved. Spectrum was assured by the Army that the stop work order was only temporary and should be lifted within one or two weeks because of the urgent need for dentists as a result of the war. Spectrum remained obligated to provide dental services at Camp Shelby if the stop work order were lifted. Ultimately, on August 23, 2004, the Army terminated the first contract "for the convenience of the Government."

On September 2, 2004, the Army awarded Spectrum a second contract to provide dental services at various military bases, including Camp Shelby. Another protest from a competitor was filed, and on September 8, 2004, a stop work order was issued on the contract. Upon learning of the stop work order, Spectrum expressed concern to the Army that the stop order would cause a mass exodus of dentists with whom it was in the process of negotiating, and in response, was assured by the Army by email on September 9 that the Army was working on obtaining an override of the stop work order, which it anticipated would be accomplished within a week. What happened next is the subject of dispute between the parties.

It is undisputed that on September 9, plaintiff gave a letter of resignation to Jackson-Hinds Comprehensive Health Care Center, advising that he had accepted other employment. It is further undisputed that a week later, on September 16, plaintiff entered

4

two contracts with Spectrum. Under the first, an employment agreement, Spectrum hired plaintiff as the Dental Director at Camp Shelby, and under the second, plaintiff was hired as an independent contractor to provide dental services at Camp Shelby. Under both, he was to start work at Camp Shelby on October 4, 2004. However, as plaintiff was preparing to move to Hattiesburg to begin work, he was informed by Spectrum that the start date had been pushed back. Evidently, the stop work order had not been lifted, and in the end, the Army canceled its contract with Spectrum on November 16, 2004, and plaintiff was informed he would not have a position with Spectrum.

What is disputed between the parties is this: Plaintiff claims that he resigned his position with Jackson-Hinds Community Health Care Center on September 9 after being told to do so by Spectrum on September 8; and he claims that at no time prior to giving his notice or subsequently entering the contracts with Spectrum on September 16 was he informed of the stop work order or otherwise advised that there was any potential obstacle to his commencing work at Camp Shelby on October 4. In his affidavit submitted in response to Spectrum's motion, plaintiff states:

> On or about September 8, I was informed by Spectrum that everything had been finalized concerning the contract between Spectrum and the U.S. Army. Spectrum informed me that they needed me to start as soon as possible, and that they would be sending me the contracts for my signature. I informed Spectrum that I was contractually obligated to give Jackson-Hinds ninety days written notice of resignation. Spectrum told me to go ahead and

5

> tender my resignation.  I informed Spectrum that I would
> do so, as long as they were going to send me the written
> agreements.  They promised to do so, and I tendered my
> resignation.
> . . .
> I relied upon Spectrum's representations to me that they
> had a contract with the U.S. Army and they would be able
> to employ me at Camp Shelby on or about October 4, 2004,
> when I resigned my position with Jackson-Hinds
> Comprehensive Health Clinic.  I was never informed of a
> stop work order.

Spectrum, in contrast, asserts that it never told plaintiff to resign his position with Jackson-Hinds Community Health Care Center, and that in fact, plaintiff quit his job on September 9 despite having previously been told by Spectrum to continue in his current job until the Camp Shelby job was available.  Moreover, Spectrum insists that plaintiff quit his job and thereafter signed his contracts with Spectrum on September 16 with full knowledge that there was a stop work order in place.  Spectrum claims that on September 9, notwithstanding the Army's assurances to it that the stop work order of September 8 would be lifted quickly, it immediately contacted all of the dentists it was working with (including plaintiff) by telephone to advise them of the stop work order so that everyone would be fully informed.

    On the issue of whether there was a contract between the Army and Spectrum, the proof is clear; there was such a contract.  The court recognizes that despite being confronted with clear documentary evidence to the contrary, plaintiff has persisted in denying there was a contract in place between the Army and

Spectrum at the time plaintiff terminated his contract with Jackson-Hinds Comprehensive Health Care Center and entered his contacts with Spectrum.  Plaintiff does not deny that a contract was in place between the Army and Spectrum when Spectrum first began negotiating with him in July 2004.  As for the September 2, 2004 contract entered after the first contract was terminated, when shown a copy of that contract during his deposition and asked whether the document was, in fact, a contract between Spectrum and the Army for the provision of dental services at Camp Shelby, plaintiff responded, "It's fair to say."  Yet in response to Spectrum's motion, plaintiff argues that because the September 2 contract was not signed by Spectrum, there was no valid contract between the Army and Spectrum at the time Spectrum was telling plaintiff it had such a contract.  He argues, moreover, that under the terms of the putative contract, Spectrum did not have an employment opportunity for plaintiff starting on October 4, but rather, the Army had an *option* to have Spectrum provide dental services at Camp Shelby.

   In support of the former proposition, plaintiff, pointing to the testimony of Spectrum's corporate representative Sharon Krejci, claims that Spectrum has admitted that in order for the September 2, 2004 document to be a contract, it would have to be signed by Spectrum.  Even if Krejci's testimony could reasonably

be interpreted as an admission, which it cannot be,[1] her testimony on the subject is immaterial, as it is for this court, not the witness, to determine whether a contract was formed notwithstanding the absence of Spectrum's signature. In this regard, Spectrum points out in its rebuttal that the subject contract was a "negotiated acquisition" governed by Chapter 15.000 of the Federal Acquisition Regulations (FAR). Under those regulations, Spectrum's proposal in response to the Army's solicitation was a binding offer, under which Spectrum certified that it would "furnish and deliver all items set forth" in its proposal. Pursuant to 48 C.F.R. § 15.504, "[t]he contracting officer shall award the contract to the successful offeror by furnishing the executed contract or other notice of the award to that offeror." Unless "the award document includes information that is different than the latest signed proposal," only the contract officer need sign the award for a valid contract to be formed. 48 C.F.R. § 15.504(a). As the award was on the same

---

[1] When asked whether additional steps would need to be taken before the document became a final binding contract, Krejci responded, "Well, signature; which I'm sure occurred." But when asked whether a signature would be required, her response was rather murky: "Yeah. But this is just the listing of the Stop Work Order. Yeah, a signature. But I mean, that's getting really detailed. No. We are ready to go with, um, the contract again on September the 2nd." When clarification was sought, by counsel's asking, "I guess my question is when you received that document from DENCOM, that is a final contract that enables Spectrum to get to work so to speak?", Krejci responded, "Yes. Pursue."

terms as set forth in Spectrum's signed proposal, Spectrum's signature was not required on the award document.  Moreover, the document itself states, "Attention is directed to the Contract Award provision of the solicitation that provides that a written award of acceptance of offer mailed, or otherwise furnished to the successful offeror, results in a binding contract."

Plaintiff next argues, without elaboration, that the contract merely gave the Army the "option" of having Spectrum provide dental services at Camp Shelby.  The only support for this assertion is the page in the contract which identifies the dental positions to be provided for Camp Shelby and which includes the word "OPTION."  The contract elsewhere provides that the contractor, Spectrum, "shall provide dental services" at the facilities listed in the agreement, including Camp Shelby, and "shall provide a work force to accomplish the specified quantity and quality of work within the schedule and time required herein." There is thus no merit to plaintiff's argument that there was no contract between the Army and Spectrum.

Based on the evidence of record, the court concludes as a matter of law that plaintiff has no viable claim for breach of contract as both of his contracts with Spectrum gave Spectrum the right to terminate the contracts in the event Spectrum's contract with the Army was "reduced, delayed, terminated or not in effect

at any time."[2]  Nor can plaintiff succeed on his claims for fraud, detrimental reliance or interference with contracts to the extent such claims are premised on the allegation that Spectrum misrepresented to plaintiff that it had a valid contract with the Army, for as the court has determined, Spectrum did have a valid contract with the Army.  However, to the extent plaintiff is basing his claims on the charge that Spectrum induced him to terminate his existing employment not only by representing that it had a valid contract with the Army but also by failing to inform him prior to tendering his resignation and/or prior to contracting with Spectrum, of the material fact that a stop work order had

---

[2]  The independent contractor agreement stated: "In the event [Spectrum's] agreement to arrange and provide for dental services at [Camp Shelby] is reduced, delayed, terminated, or not in effect at any time, then [Spectrum] may terminate this Agreement upon notice to Dentist."  Similarly, the employment agreement provided:  "In the event [Spectrum's] agreement to arrange and provide for dentist services at Facility is reduced, delayed, terminated or not in effect at any time, then Corporation may terminate this Agreement upon notice to [Rives]."

The court notes plaintiff's argument that he was not given written notice by Spectrum of the termination of his contracts, as required by the terms of those contracts.  The court tends to agree with Spectrum that these specific termination provisions did not require notice in any particular form.  However, even if they did, the fact is, until he filed his response, plaintiff had never objected to the adequacy of Spectrum's notice of termination.  In the court's opinion, his acceptance of oral notice and failure to allege insufficient notice in his complaint constitutes a waiver of that provision. See Sanderson Group v. Morris-Shea Bridge, 149 Fed. Appx. 234, 237, 2005 WL 1604007 (5th Cir. 2005) (finding waiver of written notice termination provision by subsequent conduct of party).

been entered, the court cannot conclude that summary judgment is in order.[3]

Accordingly, it is ordered that defendant's motion for summary judgment is denied.

SO ORDERED this 10th day of July, 2007.

                                            /s/ Tom S. Lee
                                            UNITED STATES DISTRICT JUDGE

---

[3] Spectrum denies that it directed plaintiff to quit his job, but argues that even if it did, the fact remains that plaintiff voluntarily quit his job knowing full well that his contract with Spectrum was contingent upon Spectrum's contract with the Army. In other words, it argues, plaintiff "knowingly assumed the risk that Spectrum's contract with the Army would be terminated, and any harm he may have suffered is a result of his own actions, not that of Spectrum." Accepting the facts as claimed by plaintiff, a jury could reasonably conclude that Spectrum withheld from plaintiff information that would have been material to his decision whether to quit his job at the time he did. That is, a jury could reasonably find that had he been informed of the stop work order in a timely fashion, plaintiff would have held off on tendering his resignation (or that if already given, he could have perhaps withdrawn his resignation), at least until the stop work order had been lifted, particularly if he had been informed that Spectrum expected the stop work order would be lifted within a matter of mere days.